May 15. The Judges delivered their opinions.*
JUDGE GREEN.
The Chancellor properly held in this case, that the sureties for the Guardianship, and not those for the Administration, were responsible. Mrs. Myers’ admission, in her Answer, that upon qualifying as Guardian, she received the estates of the infants into her hands, though not conclusive, is prima facie evidence against her sureties, and is not contradicted. She was not Guardian for John, and consequently, her sureties are not responsible for his share of his. father’s estate in her hands, and as to this part of the subject, the Bill should have been dismissed; but, if there were no other objection to the Decree, it should not be reversed on that account, since nothing is decreed to him.
A Guardian cannot, under any circumstances, justify the application of any part of the principal of an infant’s estate to his education or maintenance, without the previous sanction of the proper Court. This is the spirit of our *Statute, and indeed its express letter. If there is any difference in this respect, between a stranger and a parent acting as Guardian, the rule should be enforced with more rigor against the latter than the former; for there is a natural, if not a legal obligation, 3on all parents to support their children, if of ability to do so. The case of Johnson and Wife v. Holiday, in this Court, not reported, isa very strong case to this point. Although after the children grew up, their services appear to have been equal to their support, yet the expense of maintaining and educating them up to that time, far exceeded the annual income of their estates. And, I think the surplus of expenditure during that period, ought to be set-off against the income of their estates after their services were equivalent to their support, until they came to the age of twenty-one years. Our Statute allows the excess of expenditure in one year, to be set-off against the income of the next. *748 This rule has been applied by the Decree to the two sons who are Plaintiffs, but not to the daughters who are Plaintiffs, although there were much stronger reasons for applying it to the latter than to the former, they having lived with their mother until their ages of twenty-three, whilst the sons left her at their ages of seventeen. The Administrator of Elizabeth is a party in another character, and as he will be barred by the Decree from claiming hereafter as Administrator, there is no occasion to have him made a party in form in that character. Nor is it necessary that there should be an Administration on the estate of Benjamin, or that any security should be demanded of the Plaintiffs, for refunding in any event what they receive on account of his share of the estate, since he died an infant, and an apprentice, and could owe no debts. The Decree should be reversed.
JUDGE COAETER.
The intestate, Benjamin Myers, died in 1795, leaving a widow and eight children ; the eldest child about seventeen *years of age, and the youngest about three. In September, 1795, his widow took administration, and gave bond and security.
At some period or other, but when does not appear, she settled her Administration and counts; the latest date in which account is in July 1798.
In April, 1799, she became Guardian of seven of the children, the eldest son. Isaac, having attained his. age of twenty-one about that time. The next eldest child, Elizabeth, was then about nineteen years of age, and the next one to her, Benjamin, about sixteen or seventeen. It is stated in the Bill, and not denied, that Elizabeth attained her age and died, and that Benjamin died under age. Susannah, now the wife of Joseph Purcell, was about eleven years of age when her father died, and about fifteen when her mother became Guardian. Hannah, now the wife of John Wade, was about nine years old at the death of her father, and about thirteen when her mother undertook as her Guardian. Thomas was about seven at the death of his father, and about eleven when she became Guardian. John was about five when his father died, and about nine when his mother became Guardian, and Sarah, now the wife of Joseph Hansborough, was about three at the death of her father, and about seven when her mother became Guardian.
The dividend of the estate coming to each child, was about three hundred and fourteen dollars.
Joseph Purcell took administration on .the estate of Elizabeth, and gave bond in December, 1812; she was born in 1780, so that she was probably about thirty-two 3’ears of age when she died. It is not alleged in the answer that she had received her share of the estate; the allegation being, that all had been expended in maintaining and educating. It seems, however, that she asserted no claim during her life against her mother. On the contrary, it is in proof, that when on her death-bed, she said she had some money out in the hands of S. Carr, of which, she intended the ^landlord of the house then leased by her mother should be paid his rent, and after payment of her debts, she intended the residue for her mother. She made no Will though, and Carr paid the money, about $270, after payment of debts, to Purcell, as her Administrator, about which time Joseph Purcell, Thomas Myers, and Sarah, now Mrs. Hansborough, stated that Purcell and Wade talked of claiming the estate of Elizabeth. But Thomas and Sarah proposed to give it up to their mother, if Purcell and Wade would agree to it; but they said, as they had got nothing, or expected nothing from the estate of Beniamin Myers, they considered it but right to receive what was coming from Elizabeth’s estate.
It seems that Myers, the mother, kept the family together, raised and educated them reputably: that she was industrious and careful, keeping a tavern and boarding-house, devoted herself to her children, and but for the misfortune of losing her house by fire, would probably have been now solvent, and able to give them something. From age and misfortune, however, she ultimately became paratytic and insolvent; after which, to wit, in 1815, this suit is instituted by Purcell and wife, Wade and wife,' and Thomas and John, against the widow and her securities, as Administratrix and Guardian, claiming in settlement of the Administration and Guardian’s accounts, or rather, of the latter as they are willing to abide by the settlement that had been made of the Administration account, stating her insolvency, and claiming to have from the securities, their shares of the estate, and of the portions of Elizabeth and Benjamin, Decreed to them. Isaac Myers, the eldest son, had removed from the State. He is made a Defendant, but is not regularly before the Court. He was about thirty-seven years of age though, when the suit was brought, and has never made any claim. Sarah, the wife of Hansborough, was about twenty-three years old when the suit was brought; she would not join in it, and in the Answer of herself and husband, they disclaim any interest in it. *Susannah married Purcell at about twenty-four years of age, having resided with her mother until that time, and was about thirty-one years of age when the suit was instituted. Hannah married Wade at about the age of twenty-three, having also resided with her mother, and was about twenty-nine years of age when the suit was brought. Thomas was about twetity-seven years old when the suit was brought, and John about twenty-five. When the widow became Administratrix, many of the children were of tender years, three of them females, one of fifteen, one of eleven, and one of nine. They were kept together, and of course supported by their mother, until she became Guardian, a space of about four years. Their interest in the estate would not yield more than about $19 per annum, a sum entirely inadequate to their support and education. Had the widowed mother possessed an estate sufifi- *749 cient for their maintenance and education, although I am not prepared to say that she would have been bound to expend it in that way, yet had she thought proper to do so, it would have been a voluntary donation, in no wise a bar to their future claim to their own estate. This though, was not her condition, and the only alternative was, by an industrious and frugal application of the whole fund to their general support, and the education of the young, to keep the family together; or, to throw them on the parish, and have them hired out by the Overseers of the Poor. In obedience to the promptings of the maternal bosom, or, as she says in her Answer, to the request of her husband, she pursued the former course. She administered the estate, and settled up the accounts in the course of the first four years, and then became Guardian, without having received any allowance in the account so settled, for her expenditures on the family, although two of the female children had then only arrived at an age barely fit to be bound out, a third being only about seven, and her son John about nine, both of course without education, and entirely unfit, to leave the maternal home, if that could possibly be avoided. *She then became Guardian ; and in strict Law, ought to have reported the condition of her children to the Court, and had them all bound out by the Overseers of the Poor, except Isaac, who had just attained his age of twenty-one years. Her eldest daughter, Elizabeth, was then about nineteen. She continued to enjoy the protection of the maternal roof, until her death, at the age of about thirt3T-two years. She might, when she came of age, have received her portion, had her mother been able, as probably she then was, to pay it, and sought her fortune elsewhere. It was inadequate though, to her support, and she must have hired herself out for that purpose. She elected to remain with her mother, and doubtless to apply much of her labor to her own earnings, and to acquire some little property, leaving it to her mother to expend her little portion of the common stock, to keep her little sisters and brothers at school, until the latter were fit to be bound out, and to keep the former from the possible pollution of common servitude until they arrived at age, and were finally married. This she must have seen and known was the manner in which her portion of the estate was used, and this she approved of. She never made any claim on her mother therefor, but the reverse. She wished her even to get the profits of her own earnings. She could make, and had a right to make, a proper estimate of her own security, ease and comfort, in her mother’s house, in the society of those dear to her, and she did make that proper estimate. She had the care and watchfulness of a mother during her whole life, and during her last illness ; whether that was long or short, does not appear, but she was grateful for it, and I think we are bound to believe, that had she survived until this suit was brought, she never would have joined in it, to disturb the last days of that afflicted mother. She would have been at that time thirty-five years of age, fourteen years beyond her minority. Her Administrator, if he is. to be considered before the Court, never made any claim on this score, until three years after *her death. I think she has made a good and wise distribution of her portion of the estate, which neither she, if she was alive, nor any person claiming under her, ought to be permitted to disturb. The other daughters too, had the protection and tender care of a mother, the decent apparel and upraising in a reputable boarding-house, and continued to enjoy these advantages until they were settled in life, several years after they were of full age, without complaint or demand. When they attained their age, had they asked for that pittance, which had thus been expended on them, they might possibly have received it, and gone to some kind of service elsewhere. This they wisely forebore to do; and not until ten years thereafter in the one case, and eight in the other, is this claim made by their husbands, of a mother borne down by the visitations of Providence, when, as she says in her Answer, they may suppose her incapable of defending herself.
Surely, it seems to me, they had a right to sanction these proceedings in their mother towards them, evidently so beneficial to them. This, they and their husbands have done, as it seems to me, not only by their long silence and acquiescence,, but by their express declarations, except in the case of John, who does not seem to have been present on the consultation, whether their mother should have Elizabeth’s property, agreeably to her dying wish. Thomas was about twenty-four years of age when he made these declarations. He and John were probably bound out at their age of seventeen, but John was quite young when his father died, and for a long time not in a condition to be bound out. But, even he acquiesces for four years after he came of age. They all knew the meritorious exertions of their mother in their favor, and that there was no possible way of keeping the family together, and raising them in the credit in which they were raised, except the one adopted; and no doubt these considerations operated on their consciences to produce the acquiescence and abandonment of their claim, at least so long as their mother was in health and in some degree of prosperity.
^Although, therefore, I approve of the Law as, in general, an excellent provision in the case of infants not having estate sufficient to support them; yet, as the estate was not wasted, but probably applied as their father intended, I can see nothing in that Law to prevent those interested, when they come of age, to approve and sanction a departure from it, which must have tended, as in this case it seems to me it did, especially in the case of the females, so much to the general advantage of the whole family. This, too, is the view very properly taken of it by the youngest daughter. On these grounds, I think, the Bill ought to have been dismissed. But, there can be no pretext, as it seems to me, to give them the share of *750 Elizabeth, or to charge interest in the case of the daughters, from their age of eighteen, instead of twenty-one. The interest of their estate, until that age, had they then sued for it, would surely have been allowed for their maintenance and education. If the Bill is not to be dismissed, the Account and Decree ought to be reformed in these particulars. It is not a case in which the Court ought to go to one cent beyond what the Eaw imperiously demanded. Had the suit been brought in due time, these securities might have had some indemnity from the estate of the mother. It is delayed until that fails, and that the Appellees are entitled to no more than sheer Eaw.
The PRESIDENT.
If the application for relief was to the equity of the Court, I should not incline to afford it upon the facts in this case, but the Plaintiffs rely on their legal rights, which they have never relinquished, and come into the Court of Chancery, because, in the state of the parties, the whole controversy could not be settled in a Court of Eaw, and for the settlement of the accounts of the Defendant, Elizabeth Myers, both as Administratrix and Guardian. As to the former, there is now no controversy, it having been admitted by the parties to have been correctly settled. As to *the latter, her account as Guardian, she admits, in her Answer, that when she qualified as such, she received the estate into her hands in that capacity, but she insists, that the Plaintiffs have no claim against her, as the whole of it was expended on their maintenance, and some small advancements. For the latter, she has credit. By the 26th section of the Act concerning Guardians, her defence as to the former is forbidden. Under that section, whatever might be her motives, she could expend no part of the principal of the estate on the maintenance of her Wards, without the approbation of the Court. Such a defence could not be made at Eaw, and to allow it in a Court of Equity, would be to repeal the Statute. Beyond the interest upon the principal estate, she was not at liberty to go. The Decree was therefore correct in disallowing any credit for the principal so expended ; but, as she might expend the interest on the maintenance of her Wards, it is erroneous is not allowing her a credit to that amount, until her Wards respectively attained the age of twenty-one years. It is, therefore, to be reversed, and the Decree agreed upon by a majority of the Court entered.
Decree of the Court.
The Court is of opinion, that the said Decree is correct in disallowing any credit for the principal expended by the' Appellant, Elizabeth Myers, in the maintenance of her Wards; but the same is erroneous in charging her with any interest before her Wards attained the age of twenty-one years; therefore, it is Decreed and Ordered, that the said Decree be reversed and annulled, and that the Appellees do pay unto the Appellants, their costs by them expended in the prosecution of their Appeal aforesaid, here-. And this Court proceeding to pronounce such Decree as the said Chancery Court ought to have pronounced, it is further Decreed and Ordered, that the Appellant, Elizabeth Myers, who was Guardian of the Appellees, Hannah Wade, *Susan Purcell, Thomas Myers and John Myers, and the Appellants, Eewis and Hough, her securities, do pay unto the Appellee, John Wade, in right of his wife Hannah, the sum of three hundred and seventy-nine dollars and seventy-six and a half cents, with interest thereon at the rate of six per centum per annum, from the eighteenth day of May, eighteen hundred and seven, (when she arrived at the age of twenty-one years,) till paid; to the Appellee, Joseph Purcell, .in right of his wife, Susan, the sum of three hundred and seventy-five dollars, and twenty-six and a half cents, with like interest thereon from the eighth day of December, eighteen hundred and five, (when she arrived at the age of twenty-one years,) till paid; to the Appellee, Thomas Myers, the sum of four hundred and three dollars and seventy-six anda half cents, with like interest thereon from the fifteenth day of April, eighteen hundred and nine, (when he arrived at the age of twenty-one years,) till paid; to the Appellee, John Myers, the sum of four hundred and three dollars and seventy-six and a half cents, with like interest thereon from the twenty-seventh day of March, eighteen hundred and eleven, (when he arrived at the age of twenty-one years,) till paid: And also, that the Appellants do pay unto the Appellees, their costs by them in the said Chancery Court expended.

 Absent, Judges Cabell and Care, the latter of whom had rendered the Decree of the Court below, and therefore did not sit in the case.